STATE, EX REL. ROY STEPHENS, RELATOR, V. FRANK MARSH, SECRETARY OF STATE, RESPONDENT.

FILED NOVEMBER 10, 1928. No. 26783.

*J. A. Brown* and *I. E. Ferguson,* for relator.

*O. S. Spillman, Attorney General,* and *George W. Ayres,* for respondent.

Good, J.

This is a statutory proceeding before a justice of the supreme court, wherein the relator, Roy Stephens, claiming to be the chairman of the state central committee of the workers' party, seeks a summary order against the respondent, the secretary of state, requiring him to accept and file certificate of nominations and additional petition of qualified voters, and to certify the nominees of said workers' party as candidates, to be voted upon by the electors of the state at the election on November 6, 1928.

The proceeding is instituted pursuant to the provisions of section 3, ch. 108, Laws 1925, which, in so far as applicable, is as follows:

"All certificates of nomination or nomination statements, which are in apparent conformity with the provisions of this article, shall be deemed to be valid, unless objections thereto shall be duly made in writing within ten days after the filing of the same. In case such objection is made, notice thereof shall forthwith be mailed to all candidates who may be affected thereby, addressed to them at their respective places of residence as given in the certificate of nomination * * * on file in that office. * * * The officer with whom the original certificate was filed * * * shall, in the first instance, pass upon the validity of such objection, and his decision shall be final, unless an order shall be made in the matter by the county court, or by a judge of the district court, or by a justice of the supreme court at chambers, on or before the second Wednesday preceding the election. Such order may be made summarily upon application of any party interested, * * * and upon such notice as the court or judge may require. The decision of the secretary of state, or the order of the judge or supreme court justice, shall be binding on all other county, municipal or other officers with whom certificates of nomination are filed."

The proceeding is strictly statutory and is somewhat akin to a mandamus proceeding.

In his petition relator avers that he is a qualified elector of the state, chairman of the state central committee of the workers' party, a new political party of this state, duly organized in accordance with the laws of the state. He further avers that on the 19th of August, 1928, in the city of Omaha, a convention, composed of more than 500 qualified electors, was held for the purpose of organizing a new political party, adopting a party name and nominating candidates for various public offices, to be voted upon at the general election in November, 1928; that said convention resolved to form a political party, adopted the name

"The Workers' Party," and made nominations for president and vice-president of the United States, for governor of the state of Nebraska, for congress for the second district, and for the various state offices; that on August 20, 1928, a certificate was filed with the respondent, showing the holding of such convention, the forming of a new party, the adoption of a party name, and the nomination of candidates for the various offices mentioned, and that at the same time there was filed with respondent a list of 683 signatures of persons who described themselves as electors of the state, and that they agreed to associate themselves together, to form the workers' party, to affiliate therewith, and to support its nominees at the general election, to be held in November, 1928; that said certificate and agreement were in all respects in conformity with the statutes of the state, and that it then became the duty of respondent to accept said certificate and petition as valid, unless objection should be made in writing within ten days, and that no notice was given to respondent of the filing of any objections until the 24th day of September, 1928; that on said date a hearing was held by the respondent at which, it appeared, there was a written protest filed against the placing of the candidates of the workers' party upon the ballot, but that said protest did not go to the ground that either the convention, or the certificate of nomination filed, was insufficient or defective, but that nevertheless respondent made an investigation, and on the 28th of September determined that the workers' party was not properly organized; that the petition or agreement of qualified voters, filed with the respondent, was defective, in that it did not contain sufficient signatures of registered voters, and that the workers' party was not duly organized and its nominees were not entitled to a place upon the official ballot. In the petition it is further alleged that on the 28th day of September, 1928, a convention of more than 500 qualified electors of the workers' party was held at the Sun Theater in the city of Omaha, and again resolved to organize a political party, to be known as the workers' party, and

nominated as candidates the same persons who had been nominated at the so-called convention on August 19; that thereafter certificates of nomination were prepared, together with an agreement signed by 432 electors, agreeing to form the workers' party, to support its principles and its nominees, and such certificate and agreement were, on October 5, 1928, tendered to the respondent for filing; but that respondent refused to accept or file the same.

To this petition an answer was filed by respondent in which it is admitted that relator is a qualified elector of the state. The answer admits the filing of the certificate of nomination, purporting to show that a convention of over 500 electors of the state had been held for the purpose of forming a new party, to be known as the workers' party, and nominating a ticket; admits that objections were filed against the placing of the names of the nominees on the official ballot; admits that he, respondent, held a hearing to determine whether the candidates of the so-called workers' party should be placed upon the official ballot, and that he found that the workers' party was not legally organized and that the nominees were not entitled to a place upon the official ballot; and denies the other allegations of the petition. Further answering, he alleges that there were not 500 electors present at the so-called convention on August 19, 1928; denies that 500 electors signed the petition or agreement filed with the certificate of nomination on August 20, and denies that a mass convention was held on the 28th day of September, or that 500 qualified electors were present at the meeting held at that time and place, or that any legal convention was held, or that the workers' party was ever legally organized.

Section 2125, Comp. St. 1922, provides: "In order to form a new party there shall be present at a mass convention electors to the number of at least five hundred in a state convention." Section 2126, Comp. St. 1922, requires that such convention shall adopt a party name, and electors to the number of 500 shall sign an agreement to

form such new party and support its nominees at the next election, such certificate and agreement to be filed with the secretary of state.

Upon the hearing of this matter evidence was adduced on behalf of both parties. The evidence of relator tends to prove that more than 500 were present at the so-called convention held on August 19, 1928, while the evidence on behalf of respondent tends to show that not more than 200 persons were present. The evidence is in conflict. The evidence further shows that some of those persons were children. It is not disclosed how many of the persons were electors. So far as the evidence discloses only two are positively shown to be electors; nor is it shown how many persons participated or attempted to participate in the deliberations of the convention. It is a matter of common knowledge that many persons, other than those belonging to a political party, frequently attend such conventions as interested spectators. No record was made of the persons attending, or of those participating in the alleged convention; nor was there any showing that more than two or three of them were electors. Section 2125, Comp. St. 1922, requires a convention of 500 electors. Relator utterly fails to show that a valid convention was held.

Relator argues, however, that that question is not open for determination at this time; that the secretary of state was authorized only to conduct a hearing when a protest was filed which named the grounds on which the protest was based; that such protest was in the nature of a pleading, and that the secretary of state was not authorized to investigate or determine any objection not set forth in the written protest. The protest filed was within the time prescribed by statute, and was informal in its nature. However, it was therein suggested to the secretary of state that the protestant doubted whether a legal convention had been held and requested the respondent to investigate and determine the question. The statute nowhere makes any provision as to the nature of the protest, but provides

that if a protest is filed it is the duty of the secretary of state to conduct the hearing.

A very similar question was before the supreme court of Nebraska in *State v. Allen*, 43 Neb. 651, wherein it was held: "It is provided by said act that all certificates of nomination which are in apparent conformity therewith shall be deemed valid unless objection is made thereto; that in case objections are made candidates shall be notified and the officer with whom the certificate is filed shall pass on such objections, and his decision will be final unless a further order is made by the county court, a judge of the district court, or a justice of the supreme court. *Held,* that such officer, in the consideration of objections, is·not confined to mere formal matters relating to the certificate of nomination, but may determine from extrinsic evidence whether the candidates therein named were in fact nominated by the convention or assemblage of voters or delegates claiming to represent a party which cast the requisite number of votes at the last election." In the course of the opinion it was said (p. 660) : "What was the duty of the respondent in regard to the so-called 'Sturdevant ticket'? It is by section 9 of the Australian ballot law provided that the secretary of state shall immediately, upon the expiration of the time for filing certificates of nomination with him, certify such nominations to the several county clerks. By section 11 it is provided: 'All certificates of nomination which are in apparent conformity with the provisions of this act shall be deemed valid unless objections thereto shall be duly made in writing within three days after the filing of the same. In case such objection is made, notice thereof shall forthwith be mailed to all candidates who may be affected thereby. * * * The officer with whom the original certificate was filed shall, in the first instance, pass upon the validity of such objection, and his decision shall be final unless an order shall be made in the matter by the county court, or by a judge of the district court, or by a justice of the supreme court.' It is claimed on behalf of the respondent that he is, by the pro-

vision quoted, required to determine all objections which may be interposed to any certificate, both formal and substantial. On the other hand, it is contended that his jurisdiction extends to matters of form only, and that in no event can he look beyond the certificate itself for the purpose of inquiring into the regularity of the nomination. The reluctance of courts to decide between rival factions of political organizations is proverbial, and is illustrated by the following, among the many cases in point: * * * In the case at bar the claim of the relators rests upon the certificate alone. If they were placed in nomination by a convention, or even by a faction of the democratic party, that fact does not appear from the record. We are fully in sympathy with the sentiment to which expression is given in the cases cited, and are not unmindful of the abuses liable to follow from the entrusting of such extraordinary power to a mere ministerial officer and usually political partisan. But are we not, according to the doctrine of those cases, merely 'escaping the perils of Charybdis to perish in Scylla'? However strongly we may condemn the doctrine that to the secretary of state, or other officer exercising similar functions, is intrusted the power to determine questions of the character under consideration, equally to be deplored is an interpretation which limits his inquiry to matters of form only and requires him to recognize every paper having the semblance of a certificate of nomination regardless of the source from which it emanates, or whether or not such nominations were in fact made in this manner or by the agencies authorized by law.

"Briefly stated, our conclusion is that, while it is not the province of the secretary of state under our system to decide between rival factions of a party where each faction has made nominations, he should, in case of objection, ascertain from the record, or from extrinsic evidence, whether such candidates or either of them were in fact placed in nomination by a convention or assemblage of voters or delegates claiming to represent such party."

The courts of this state are therefore committed to the doctrine that it is within the province of the secretary of state, when a protest is filed, to investigate not only matters of form, but to determine whether or not a convention, such as is required by law, was, in fact, held to form a new party and place candidates in nomination. This the secretary of state did, and rightfully determined that a legal convention was not held on August 20, 1928, and that the certificate of nomination, purporting to be made at such convention, was invalid and did not entitle the nominees to be certified as such and placed upon the official ballot.

It is urged by relator that it was the duty of the secretary of state to accept the certificate of nomination and the agreement, purporting to be signed by 432 electors, tendered to him on October 5, and to use the petition or agreement, with the names of 683 persons, which had been filed on August 20, as a part of the nomination papers of the convention, held on September 28.

The contention is not valid for the following reasons: The preponderance of the evidence shows that at the convention held on September 28 there were less than 500 present, and there is no showing as to how many of those present participated in the deliberations, or how many were, in fact, electors. It does not appear, therefore, that any valid convention was held on the 28th day of September, and, although the certificate tendered was in due form, it was not accompanied by an agreement signed by 500 electors, as provided by statute. Unless the petition or agreement, which was filed on the 20th of August, should be considered as a part of the nomination papers tendered for filing on October 5, the respondent was justified in refusing to accept the nomination papers tendered on the 5th of October. That the list of persons signing the agreement on the 20th of August cannot be considered in connection with the nomination papers filed October 5 seems clear. The statute certainly would not contemplate that any body of electors would agree to support the nominees

of a party several weeks in advance of the formation of such party, before they could know who the nominees would be and before they could know what principles the party would enunciate or support. If such a petition could be prepared and signed four or five weeks before the organization of the party, it might be done as many months or even years before the organization of such party.

We think the statute, fairly and liberally construed, contemplates that the agreement or petition, to be signed by the voters, agreeing to form a new party and support its nominees, must be signed at the time the mass convention is held, or subsequent thereto. The agreement may be formulated and signed at the same time that the convention is held, or at any time subsequent thereto, but it cannot precede the holding of a convention. The certificate and agreement, which were tendered to the secretary of state on the 5th of October, 1928, did not comply with the law because the agreement or petition lacked the signatures of 500 electors. The respondent was, therefore, justified in refusing to accept or file the same.

We conclude that relator is not entitled to the relief demanded or any part thereof, and it is therefore considered and adjudged that his petition be dismissed and that he pay the costs of this proceeding.

PETITION DISMISSED.