For the reasons stated in this opinion, the judgment of the district court is

AFFIRMED.

STATE, EX REL. ROBERT SMITH, RELATOR, V. FRANK MARSH, SECRETARY OF STATE, RESPONDENT: GEORGE W. NORRIS, INTERVENER.

FILED SEPTEMBER 23, 1930. No. 27643.

*John P. Breen,* for relator.

*Charles E. Matson,* for respondent.

*William E. Shuman,* for intervener.

*C. A. Sorensen, amicus curiæ.*

GOSS, C. J.

This proceeding is strictly statutory. It is not a mandamus proceeding but is somewhat akin thereto, as stated by Judge Good in his opinion in *State v. Marsh,* 117 Neb. 579. In respect of the relief asked, this particular case is rather a mandatory injunction. It was instituted pursuant to the provisions of section 2119, Comp. St. 1922, as amended by section 3, ch. 108, Laws 1925, now known as section

32-1129, Comp. St. 1929. So far as applicable, the statute is as follows:

"All certificates of nomination or nomination statements, which are in apparent conformity with the provisions of this article, shall be deemed to be valid, unless objections thereto shall be duly made in writing within ten days after the filing of the same. In case such objection is made, notice thereof shall forthwith be mailed to all candidates who may be affected thereby, addressed to them at their respective places of residence as given in the certificate of nomination * * * on file in that office. * * * The officer with whom the original certificate was filed * * * shall, in the first instance, pass upon the validity of such objection, and his decision shall be final, unless an order shall be made in the matter by the county court, or by a judge of the district court, or by a justice of the supreme court at chambers, on or before the second Wednesday preceding the election. Such order may be made summarily upon application of any party interested, * * * and upon such notice as the court or judge may require. The decision of the secretary of state, or the order of the judge or supreme court justice, shall be binding on all other county, municipal or other officers with whom certificates of nomination are filed."

On July 17, 1930, Robert Smith, a citizen and elector of Omaha, filed in this court this application under the above statute, alleging that on July 5, 1930, one George W. Norris of Broken Bow (not the present United States senator of identical name whose legal residence is at McCook and who had previously duly filed as a candidate at the primaries for the same office) filed in the office of the respondent a nomination application asking to have his name printed upon the official ballots as a candidate for the office of United States senator; that the application was accompanied by the receipt of the treasurer of Custer county for the required filing fee; that on July 8, 1930, pursuant to statute, relator filed an objection and protest against the said nomination application on the ground that it was not filed in the office of the secretary of state 40 days before the date of the

general primary election to be held August 12, 1930; that on July 15, 1930, after notice to all parties, there was a hearing and argument on said matter, and on July 17, 1930, the secretary of state overruled the objections of the relator and entered an order to the effect that, while the nomination application was not actually on file within the said 40 days in the office of the respondent, yet having been placed in the United States mail at Broken Bow on July 2, 1930, it was in effect filed in the office of the secretary of state; wherefore the said Robert Smith prays for an order of a justice of the supreme court directing the secretary of state not to certify the said George W. Norris of Broken Bow as a candidate for United States senator.

Upon filing the application, an order was made requiring the secretary of state to answer by 2 o'clock p. m. the next day, July 18, 1930. Mr. Marsh promptly accepted service of the order and at the time named filed his answer. Notice had also been given to the attorney for George W. Norris of Broken Bow, who appeared and was granted leave for his client to intervene. The answer of the secretary of state shows that it had been the settled practice or custom of himself and predecessors, for a considerable period, to consider as filed in the office of the secretary of state all nomination papers postmarked not later than midnight of the last day for such filings; and that he had announced to the press prior to July 3, 1930, that he would accept, as filed in his office, any nomination application postmarked before midnight of that day. This being a summary matter under the statute and there appearing a need for early disposition of it, an application for a continuance was denied. Also application was made that the judges of the court sit *en banc* and hear the matter. This, too, was denied, and hearing of the evidence and arguments of counsel thereon proceeded and was concluded at a night session. At the conclusion thereof an order was duly made and an oral decision was delivered directing the secretary of state to omit from his certification of candidates for United States senator the name of George W. Norris of Broken Bow. It appearing desirable that an opinion should be written for whatever

value it may have in the future to candidates, to officials and to the profession, this opinion is prepared.

Section 2114, Comp. St. 1922, as amended by section 1, ch. 108, Laws 1925, now known as section 32-1124, Comp. St. 1929, provides: "The name of no candidate shall be printed upon an official primary ballot unless at least forty days prior to such primary, either he, or twenty-five qualified electors of the party with which such candidate affiliates, shall have filed a written application with the proper authority and in substantially the following form." It is conceded July 3 was the last day for political filings for the general primary of August 12, 1930, and that a filing later than that would be less than 40 days prior to the primary. But the facts showed as pleaded in the answer that it had been the custom for a long time to receive filings if postmarked within the legal filing time, and the secretary of state caused to be published by newspaper men that in this instance he would receive filings for the primary if postmarked any time on July 3, 1930. The evidence shows that the nomination application of George W. Norris of Broken Bow was postmarked July 2, 1930, was sent by registered mail, addressed to the secretary of state, Lincoln, was received at the post office at Lincoln shortly after 1 o'clock p. m., July 3, and was not delivered at the office of the secretary of state until the morning of July 5, 1930. It did not arrive at the post office in time July 3 to be handled as a registered item and to be taken to the Capitol in due course of mail that afternoon and there was no delivery on the following holiday.

It is argued by the respondent and by the intervener that the statute as to the time of filing is merely directory and that the custom of the office and the notice given to candidates and to the public that filings arriving by mail after July 3, if postmarked then or before, justified the secretary of state in considering this filing as if made within the statutory 40 days before the primary. In their argument for a liberal construction of the statute they quote from the first section (section 2091, Comp. St. 1922, section 32-1101, Comp. St. 1929) of the primary law the words: "This ar-

ticle shall be liberally construed so that the real will of the electors may not be defeated." But the meaning of the section is not full and complete without the remaining words of the section following the word "defeated," namely, "by an informality or failure to comply with all the provisions of law in respect to either the giving of any notice or the conducting of the primary or certifying the results thereof." The intent of the legislature seems to have been to direct the attention of executive officers and of the courts to a liberal construction in the interest of furthering "the real will of the electors" (rather than candidates) by lack of technicality as to (1) the giving of any notice, (2) or the conducting of the primary, (3) or certifying the results thereof. So far as anything appears in the section or the act, the legislature has expressed no particular concern for any liberality of construction in order that the will of a would-be candidate should be favored and that jurisdiction be given his candidacy unless he comply with the terms of the law. A very good reason inheres in the demand for liberal construction as to the electors themselves. They are so numerous as compared even with candidates at a primary that the legislature, realizing that they could not well check official acts relating to elections in advance and desiring them to be protected against faulty notices of electors, or technical faults in the conduct of elections or in the certification of the results thereof, adopted this highly proper section.

An illustration of such a liberal construction by the courts in order to carry out the will of the elector is found in *State v. Russell*, 34 Neb. 116. There the early "Australian ballot law" adopted in 1891 was that same year up before this court for consideration as to whether ballots should be counted when marked by the electors in pencil, although the statutes provided they should be marked in ink. This court held that "the provision * * * for the marking of ballots with ink is directory only, and ballots, if in other respects regular, will, in the absence of fraud, be counted, although marked with a pencil." The respondent in his written conclusions of law, when he passed upon the

Norris application, misinterpreted the citation of *State v. Russell, supra,* by Judge Letton, in the opinion written by him in *Richmond v. Breithaupt,* 110 Neb. 859. On page 862 the opinion said: "The statutory provisions relating to elections are not mandatory, but directory. *State v. Russell,* 34 Neb. 116." One must estimate the meaning and effect of an opinion by what is under consideration by the court and is being discussed by the writer of that opinion. The quoted words were used in argument. They were not repeated nor reflected in any way by the court in the syllabus of the case. The question involved was whether certain ballots, if marked and cast by electors, should be admitted in evidence in an election contest. The act of marking the ballot was purely an act of the voter. The thought of the writer of the opinion was fixed on that and so as to that he concluded that the statute was not mandatory but was directory. Neither in *Richmond v. Breithaupt, supra,* nor in *State v. Russell, supra,* has any such unqualified proposition of law been adopted with relation to the entire election law.

They cite also *State v. Amsberry,* 104 Neb. 550, where the statute relating to liberal construction was incidentally referred to in the course of the opinion. In that case John H. Morehead was nominated as a candidate for governor by the petition of the requisite number of electors. The petition was filed with the secretary of state on March 20, 1920, which was the last day for such filings on that year as the statute then stood. The candidate so nominated by petition had five days within which to accept. But, and this was the turning point of the case, unless objection was filed within three days after the nominating papers were filed, the statute deemed them to be valid. The county treasurer's receipt for the filing fee had not been filed, though the fee had been paid on March 20. No objections were made within the statutory three days, and before the five days expired Mr. Morehead telegraphed his acceptance and the treasurer telegraphed that the fee had been paid on March 20. Before the five days expired the secretary of state had received and filed both the receipt of the treasurer and the formal acceptance of Mr. Morehead. The single

syllabus in the case puts the decision on the ground that the certificate of nomination must be deemed valid because no objection was made to it within the three-day period after it was filed. While the opinion did not cite the case, it was in line with the holding in *State v. Piper,* 50 Neb. 40, to the effect that the statute, requiring objections to a certificate to be made within three days after its filing, is mandatory.

The nearest identical case we have been able to find, in facts and in principle, is that of *Seawell v. Gifford,* 22 Idaho, 295. It is found also in Annotated Cases, 1914A, 1132, and has attached to it there a helpful note on the subject of the mandatory character of such election statute. In that case the certificate was actually filed in the office of the secretary of state 29 days before the primary election, whereas the statute required it to be filed not more than 60 days nor less than 30 days before the election. It was held that this provision of the statute is mandatory and that a certificate presented for filing 29 days before the election cannot be legally filed by the secretary of state. In the attached note to which reference has been made are many cases, particular reference to which would unduly extend this opinion. The writer of the note well states the effect of the great trend and weight of authority when he says: "Although the statutes on the subject of time for filing certificates of nomination vary in their wording, they are usually held to be mandatory."

In the case last discussed the filing was tendered in person. In the case at bar it was sent by registered mail and received by the secretary of state after the statutory time for filing had expired. But the secretary held that, because it was postmarked within the legal filing time and it was long the custom of that office, particularly announced in advance in 1930, to consider such a certificate so mailed as filed when mailed, it was therefore valid. In *State v. Erickson,* 152 Minn. 349, the statute required the affidavit initiatory of a candidacy at the primary election to be filed at least 40 days before the election. The affidavit was mailed the last day for filing but was not received until the next

day. The court held that the statute was mandatory, that the depositing in the mails was not a substitute for filing, and that the frequent practice of receiving such filings when so mailed was not such an interpretation or construction of a plain and unambiguous statute as would be accepted as a correct interpretation of the statute.

In *State v. Falley,* 9 N. Dak. 464, the statute required certificates of nomination to be filed with the secretary of state not less than 30 days before election. It was held that a certificate filed 29 days before the election could not be legally filed by the secretary, and that the statute is mandatory.

In *Hollon v. Center,* 102 Ky. 119, it was held: "One who files a certificate of nomination less than fifteen days before the election is not entitled to have his name printed on the ballot, that requirement of the statute being mandatory." *Brodie v. Hook,* 135 Ky. 87, likewise holds the provision mandatory. To the same effect is *Cramton v. Secretary of State,* 144 Mich. 341.

The respondent and intervener relied upon *Matter of Bayne,* 69 Misc. Rep. (N. Y.) 579. That was a case decided in the supreme court (not the court of appeals) of Kings county, New York, on application to review the action of the secretary of state in refusing to file a certificate of nomination of the nominee for the state senate by the regular democratic convention of the district. It was deposited in the mails in time to be received on the last legal day for filing but was actually received on the next day. Under the authority of an opinion by the court of appeals in *Matter of Application of Darling,* 189 N. Y. 570, involving a discretion committed to the courts by the election laws, the court granted the motion to require the certificate to be filed. The rule so announced by the court of appeals is as follows: "Though we regard the statutory requirement as to the time when certificates of nomination should be filed as mandatory, a majority of the court are of the opinion that there may occur accidents and mistakes, causing delay in such filing, from the effects of which the supreme court in either branch may, under section 56 of the election law, re-

lieve, provided it finds that the delay has not been due to the negligence or fault of the convention making the nomination, or of the party to whom the filing of the certificate was entrusted." So the highest court of the state regards the statute as mandatory save where certain discretion is permitted under their statutes.

As to executive construction or interpretation by the secretary of state and by his predecessors, it should be said that such construction or interpretation is not generally allowed, particularly in personal matters, nor where there can be found no obvious ambiguity. Here the statute is perfectly plain as to the upset time of filing. There was nothing to construe or interpret. Either the filing was in time or it was not. To hold otherwise is to allow the officer to legislate as to the time of filing. That is the office and function of the legislature. It has definitely expressed its will.

We think it may confidently be said that it seems to be a general rule of distinction running through the cases to this effect: That the time within which a thing positively stated by statute is required to be done by one who desires to be a candidate at a primary election is mandatory, while those things which are to be done by the voter and by the officials in charge of the election and the certification thereof are to be viewed and weighed with such liberality as is not inconsistent with the letter and spirit of the law and yet may arrive at the honest and true intent of the voter.

For the reasons given in this opinion, the applicant or relator is entitled to the relief granted. And the order directing the secretary of state to omit the name of George W. Norris of Broken Bow from the list of candidates for United States senator to be voted upon at the primary election August 12, 1930, was properly made.