**NORRIS v. UNITED STATES.***
No. 10553.

Circuit Court of Appeals, Eighth Circuit.
Nov. 19, 1936.

*Writ of certiorari granted 57 S. Ct. 432, 81 L. Ed. ——.

William E. Shuman, of North Platte, Neb. (Bert L. Overcash, of North Platte, Neb., on the brief), for appellant.

Joseph T. Votava, U. S. Atty., of Omaha, Neb. (Ambrose C. Epperson and Fred. G. Hawxby, Asst. U. S. Attys., both of Omaha, Neb., and Barlow Nye, Asst. U. S. Atty., of Lincoln, Neb., on the brief), for the United States.

Before GARDNER, SANBORN, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

Appellant, convicted of perjury and as punishment therefor sentenced to three months in jail, and fined $100, appealed in the conventional manner, as was then and now provided by rules in such case provided.

Except for the precise questions asked appellant by the Senate Subcommittee (hereinafter referred to as Committee) and his answers thereto, and the further questions raised by the alleged fact that he had in his testimony before the Committee purged himself of his alleged perjury, by correction and retraction, the case does not materially differ, either in fact or law, from the case of Seymour v. United States (C.C.A.) 77 F.(2d) 577, 99 A.L.R. 880. The alleged perjury here considered occurred in the same investigation by the same Committee, and under the same conditions and legal situation dealt with in the Seymour Case, and so such further facts as may be deemed not sufficiently relevant as to render repetition necessary here may be read by the curious in the Seymour Case, supra.

In the case at bar, the questions propounded to appellant, by the Committee, and his answers thereto, which are alleged to have been false, were as follows:

"Q. Now what assurance did you have of financial support and backing? A. None whatever.

"Q. In your campaign? A. None whatever.

"Q. Did you get any assurance from anybody that they would help you—Republican, Democrat, Independents, or anybody say they would help to finance your campaign? A. No sir.

"Q. Did you receive any money from anybody in the campaign? A. I did not."

It is urgently contended by appellant that upon a strict construction (which is insisted the law grants to him) his answers were truthful, and for this reason, among others, the trial court should have directed a verdict in his favor, as he properly and procedurally prayed.

The second point of difference between the instant case and the Seymour Case, supra, is as forecast, that the alleged perjury occurred on September 22, 1930; but that appellant, at his own request, and while the hearing and investigation were by the Committee current and unfinished, again took the witness stand on September 23, 1930, and the following proceedings were had, and the following questions and answers were asked of and made by him:

"Q. Now Mr. Norris, do you want the story that you have told us of your entire

connection with this campaign to stand as your story? A. Outside of, I might make a few changes in it, the same as Mr. Johnson has. He did give me $50.00. I got a bank draft and mailed it back to him after I got my commission check.

"Q. Mailed it back to whom? A. Mr. Johnson.

"Q. You thought, then, Mr. Johnson was paying this $50? A. I borrowed it.

"Q. You borrowed it? Didn't you hear his testimony that someone had given him that money to give you? A. No; besides that.

"Q. You borrowed something in addition to that filing fee, $50? A. Yes sir.

"Q. From Mr. Johnson? A. Yes sir.

"Q. You sent that back to him? A. You will find the transaction there.

"Q. But you never made any reimubursement of the $50 you got for the filing fee? A. No, sir; I never paid him that back.

"Q. Now, what other changes would you want to make in the story you have told us? A. I believe that is all. I would like to go on tomorrow and make some changes.

"Q. Let us make whatever changes are needed there, and if you have made any untruthful statements today surely you know what they are and can correct them now. A. You mean yesterday?

"Q. Yesterday. A. Do you have a copy of that there?

"Q. No; we don't have a copy of that. A. That is all that I know, outside of—

"Q. That is all that you know? Now, what of this. $500 that was given to you? A. That was given to me by Mr. Johnson and cashed at North Platte with my brother."

Based upon the above evidence, given in the hearing before the Committee, appellant now contends that either a directed verdict in his favor should have been ordered by the court or, at least, that certain instructions offered by him upon the trial and refused by the court should have been given.

These refused instructions were as follows:

"The Jury are instructed that even if you find that the defendant in this case made false answers to the questions which were put to him at the hearing before the Senate Committee in question, and if you also find that while this hearing was yet continuing and while the matter was yet pending before the Senate Committee, the defendant corrected any erroneous or false statements that were made, if any, then you will find the defendant not guilty.

"The Jury are instructed that if you find the defendant, in the latter portion of his examination before the Senate Committee, corrected statements that may have been incorrect or even intentionally false, made prior to the correction of the defendant, then you will find the defendant not guilty."

As forecast, it is urgently insisted here, by appellant's learned counsel, that neither of the four answers of appellant was false; but each of them was strictly true. This insistence is bottomed on the alleged fact that appellant had never engaged in, nor was he at all involved in, a campaign, because his intended campaign for United States Senator had been, after he had filed his application and certificate, cut short by the decision of the Supreme Court of Nebraska (State ex rel. Smith v. Marsh, 120 Neb. 287, 232 N.W. 99, 72 A.L.R. 285), on the ground that his application had been untimely filed, and so he was not permitted to have a place on the ticket to be voted August 12, 1930, at the primary election. He had filed this application with the Secretary of State of Nebraska on the 5th day of July, 1930, only some 38 days prior to the day of the primary election. Since the Nebraska statute required all such applications to be filed not less than 40 days before such primary election, the Supreme Court of Nebraska, by a judgment rendered on July 18, 1930, that appellant's application was untimely filed and ordered that appellant's name should not be put on the ballot.

So, since all of the questions, except one asked and answered by appellant, referred to a campaign, it is insisted that appellant answered these questions with absolute truth, because he contends he never engaged in a campaign; for the simple reason that the ruling of the Nebraska court prevented the placing of his name on the ballot. So, it is seriously urged, that a question to appellant about any matter pertaining to a campaign or to his campaign is a question about a nonexisting thing. The insistence clearly involves the most attenuated casuistry. Nothing is clearer, from this record and the record in the case of Seymour v. United States, supra, which, because this case and that one are interrelated, we are permitted to notice (Freshman v. Atkins, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193), than that the word "campaign" as used in this case and on the hearing before the Committee, was fully and clearly understood

by both appellant and the members of this Committee. It meant, as the context shows, the acts and efforts of the appellant to bring about his nomination as the Republican candidate for the office of United States Senator from Nebraska, and everything indicates that appellant so understood it when he answered the three questions which contained the word. True, divers circumlocutory phrases could have been substituted for the word "campaign," which would have described more graphically the abysmally sordid political trickery attempted to be worked by appellant and those who conspired with him. Many of these synonymous circumlocutions are obvious, but the use of such of them, by the Committee, as would have served to characterize the situation accurately, might well have seemed to prejudge the finding of the Committee. The word "campaign" is in the public domain. It has no technically legal use. If it had, many of the cases cited to us by appellant might well be in point. The meaning of the word "campaign," when applied to a candidacy for an office, is known of all men. True, its constituent elements—the things which are done in a campaign—differ from zero to infinity. The word means, when applied to a personal political candidacy, all of the things and necessary legal and factual acts done by the candidate and his adherents, in an effort to obtain a majority, or plurality of the votes to be cast in any election for a public office. When it is necessary, as in Nebraska, to pay a filing fee, and file with the Secretary of State an application for a place on a ticket to be voted at a primary election, and these things are done, two of the constituent elements of a campaign for an office have been done. In short, a campaign for a public office in a public election merely and simply means running for office, or candidacy for office, as the word is used in common parlance and as it is understood by the man in the street. What further may be done by the candidate after announcing his candidacy, or after compliance with local statutes by which he becomes a legal candidate, rests in the discretion of the candidate and in the wisdom (or folly) of his friends. He may not spend $1, or he may spend many—but not now, as regulated by law, too many. He may "sit on the front porch" and let the voters come to him, or he may "make a swing around the circle" and personally go after the voters. So much is said in order to make plain the view that the meaning of the word "campaign," when applied to one running for a public office, has no relation to the nature or sum, that is, quantity or quality, of the efforts put forth; for such efforts may be few, many, or even none. Just prior to appellant's answering the crucial questions here under discussion, he had testified before the Committee as to the circumstances and reasons for his filing an application to be put on the primary ticket as a candidate for United States Senator. While much, if not all, of this testimony was false, evasive, and wholly disingenuous, as this record now indicates, it yet clearly indicates, we repeat, that he knew precisely what was meant by the word "campaign," when that word was used in the questions asked him.

When appellant filed his application for a place on the ticket to be voted at the primary election, he became in effect a candidate for the office of United States Senator from Nebraska, for by that public act he expressed his desire for the office and his willingness to accept it. This desire and willingness he never voluntarily renounced. He was running for office; he was a candidate for office (see Adams v. Lansdon, 18 Idaho, 483, 110 P. 280; Leonard v. Commonwealth, 112 Pa. 607, 4 A. 220; State v. Bates, 102 Minn. 104, 112 N.W. 1026, 12 Ann.Cas. 105), at least from July 5, 1930, when he filed his verified application, till July 18, 1930, when the Supreme Court of Nebraska ordered that his name be omitted from the ticket. Whether he did any more, or whether he did any other act to forward his candidacy, is wholly immaterial; surely the question whether he did few or many things has no bearing upon the meaning of the word "campaign"; for the simple reason that, if the inquiry shall be as to how many things and the nature thereof are necessary to constitute a campaign, an answer becomes impossible, for no criterion exists as to the nature, number, quantity, or quality of things done, which would enable us to say that on the one side a campaign exists, and on the other side there is none.

We are constrained to the view that the argument advanced is hypercritical, and so disallow it without more. It follows that the trial court did not err in refusing to direct a verdict in favor of the appellant on the ground that as a matter of fact appellant's answers were true. It is clear that his first answer was false, upon any view.

After the charge to the jury, to which otherwise no exceptions were taken, appellant requested the court to charge the jury

touching the legal effect of appellant's second appearance on the stand and his change and alleged correction of his testimony. These instructions appear above in the statement of the case. The court below refused to give these instructions or either of them and appellant excepted.

We are constrained to the opinion that this refusal constituted error. As early at least as 1669 (see Roy v. Carr, 1 Siderfin's Rep. 418) it was held by the King's Bench in England that a false answer in chancery is purged of perjury if, in a subsequent answer filed in the cause, the false answer is corrected. From the above case seemingly the well-settled modern rule had its origin. This rule is well stated in Bishop on Criminal Law (9th Ed.) § 1044a, thus: "The law encourages the correction of erroneous and even intentionally false statements on the part of a witness and perjury will not be predicated upon such statements when the witness, before the submission of the case, fully corrects his testimony. Says the New York Supreme Court [People v. Gillette, 126 App.Div. 665, 111 N.Y.S. 133] 'a judicial investigation, or trial has for its sole object the ascertainment of the truth, that justice may be done, it holds out every inducement to a witness to tell the truth by inflicting severe penalties upon those who do not. This inducement would be destroyed if a witness could not correct a false statement except by running the risk of being indicted and convicted of perjury.' "

Ruled cases upon the point are few, but, so far as we can find, unanimous in upholding the view of the law on the point taken in Mr. Bishop's excellent work, quoted above. See, People v. Brill, 100 Misc. 92, 165 N.Y.S. 65; Henry v. Hamilton, 7 Blackf.(Ind.) 506; People v. Gillette, 126 App.Div. 665, 111 N.Y.S. 133; Brannen v. State, 94 Fla. 656, 114 So. 429; Bijur v. Bendix, 52 App.D.C. 240, 285 F. 974. In fact no case called to our attention by counsel, or which we have been able to find, contravenes the law upon the point as written by Mr. Bishop. Even two of the three cases cited herein by appellee affirm it as being the law.

Counsel for appellee, however, cites and strongly relies on the case of Seymour v. United States, 77 F.(2d) 577, 582, 99 A.L.R. 880, decided by this court, which is, as said already, an interrelated case and which arose out of perjury committed by the appellant therein, one Seymour, in the identical hearing before the Committee, which is involved in the instant case. In the Seymour Case, supra, we used this language: "The situation is that, if false material testimony was knowingly given, perjury had been committed and nothing thereafter done could alter that situation, while if such testimony was the result of an innocent mistake it was not perjury."

If the facts in the Seymour Case, supra, had been upon the point under discussion, similar to the situation here confronting us, the last-quoted language would constitute a statement of the legal rule on the point in fairly direct contradiction of what we deem to be the true rule of law. But the facts in the Seymour Case must be held in mind. The accused therein had given before the same Committee testimony which seemingly was the subject of newspaper comment after appellant here and others had testified. Upon seeing such comment, Seymour wired from Denver, to the Chairman of the Committee, among other things not pertinent thus: "In justice to the Committee and myself I will be glad to appear before the Committee at Washington any time after the middle of November which may suit your convenience. At present my time is fully occupied with duties requiring my personal presence here." Based on the above telegram, Seymour insisted on an appeal to this court that an instruction should have been given by the trial court in his case bottomed upon the above telegram, as a bona fide, but incompleted attempt to correct false testimony.

In responding to the latter contention and in disallowing it, this court used the language quoted above from the opinion in the Seymour Case, upon which appellant relies. But the facts here upon the point under discussion in this instant case are not at all similar to the facts in the Seymour Case. Here appellant, on the day following his giving of the answers now here relied on by appellee as constituting perjury, and, of course, while the hearing and investigation had not been completed and was continuing, was again called to the witness stand, and he there and then corrected, or attempted to correct, the false answers given by him on the day before. In the Seymour Case the accused therein never again took the stand, nor did he correct, or attempt to correct, the false statements made by him as a witness in the hearing. In fact, his telegram, to the Committee does not by its language amount to a request that he be allowed to correct anything he had theretofore sworn to, nor is there any admission or intima-

tion in it that he had sworn falsely. So it did not even constitute "a bona fide but incompleted attempt to correct false testimony." At best, it simply indicated his willingness, at his own convenience, to give further testimony; whether true or false, does not appear.

■■ It was in response to this situation and contention that this court used the quoted language found in the opinion in the Seymour Case, and which is relied on by appellee as a categorical ruling by this court, that a witness, who has sworn falsely, may not under any circumstances thereafter purge himself thereof. The language relied on by appellee, when considered in the light of the facts up for judgment in the Seymour Case, was obiter dictum merely. For undoubtedly the rule to be applied in a situation such as is presented in the case at bar is that when a witness in a trial, hearing, or investigation has, whether intentionally or unintentionally, given false, or perjured testimony, but afterwards in the same trial, or hearing, or investigation, and before such trial, etc., has been completed, fully corrects all false answers and statements theretofore made by him, he cannot be successfully prosecuted for perjury. Of course, he must fully and fairly correct all false statements formerly sworn to by him, and on which a prosecution for perjury could otherwise be bottomed. He cannot purge himself thereof only in part, or doubtfully and evasively, but must do so fully. If what he last swore comprehends a full correction, his last testimony comprises the ultimate facts in the case, so far as the witness is concerned. If he shall correct fully and fairly every false statement theretofore made by him, on which a charge of perjury might be, or is, as here bottomed, it may well be that the matter is one for the court, and in a trial for perjury may well warrant a directed verdict of acquittal in favor of the accused. But, if his correction is doubtful or evasive, or not full and fair, the question whether he has purged himself is one for the jury.

The charge asked by appellant in the first clause of the quoted requested charges is upon one view ambiguous and not clear. But the language of the last clause of the requested charge, we think, so far as it goes, correctly states the law, and should have been given. Upon another trial, if the proven facts shall be similar upon the point to those in the record before us, some such charge as that suggested below should be given, to wit:

The jury are charged that the law encourages the correction of erroneous and even intentionally false statements made by a witness upon a trial or hearing, and so, if you shall find and believe from the evidence that defendant made false answers to the questions or any of them which were put to him at the hearing before the Senate Subcommittee (which questions are set out in the indictment and which questions the court has already in this charge called specifically to your attention), yet that defendant, while the hearing was continuing and unfinished, again took the witness stand, and then and there fully corrected all erroneous or false statements, if any, which had theretofore been made by him in answer to said questions, you should find the defendant not guilty.

■ Appellant further contends that the trial court erred in refusing to permit him to testify on the trial below that he was willing, when he returned to the witness stand in the hearing before the Committee, to correct any other part of his false statements made by him when first testifying, if he had been permitted to do so. This, appellant urges, should have gone to the jury as bearing on his intent.

On this point the record quoted above herein shows seemingly all that occurred when appellant last took the stand in his effort to retract. All this was before the jury. He did say that he would like to go on the stand "tomorrow and make some further changes." To that request the Committee said to him, in effect, that he could make such changes at that time as he desired to make, and in effect refused to hear him on the next day. In short, he was afforded ample opportunity to tell the whole truth, which no one knew better than he. The Committee was under no obligation to subserve his further convenience or to afford him more than one opportunity to fully retract. This one opportunity was accorded to him, and in the state of the record on the point we are of opinion the trial court did not err in refusing to permit him to answer touching the undisclosed state of his mind when his retraction, or attempted retraction, was made. The authority for the contention (48 C.J. 828, citing only the case of Thrasher v. State, 31 Okl.Cr. 95, 237 P. 139) is not so clearly in point in its facts as to convince that the contention is well taken. The desire to correct should be indicated by

facts occurring during the trial or hearing, and not by an alleged state of mind existing some five years after the lawful right to correct had expired.

As already indicated, the alleged perjury of appellant was committed at the identical hearing before the Committee, heretofore considered by this court in the Seymour Case, supra In that case appellant here was permitted to file a brief as amicus curiæ, in which, as also in the briefs of Seymour, all questions now raised (except those discussed above in this opinion) were presented and ruled by this court, against the contentions of appellant herein. After again considering these questions, we are not convinced that the views then held and expressed were erroneous upon any rule of law, on any question up for judgment in that case. As already said, the question of retraction, pending the hearing, was not in that case; otherwise in principle the two cases are wholly similar. True it is that in the Seymour Case the object intended to be accomplished by political trickery was in aid of the candidacy at the primary election of one Stebbins who was running against Senator George W. Norris of McCook, Neb.; while here in the instant record this object appears to have been the more innocent one of getting rid of appellant as a proposed candidate for Railroad Commissioner. Yet the fact remains that appellant was, for a time at least, a candidate for the nomination at the primary election for Senator of the United States from Nebraska. So the difference is not deemed of sufficient legal importance to change the views we have heretofore announced upon the situation.

 Since we are of opinion that whether appellant fairly and fully purged himself of all of the false statements charged to have been made by him is not clear on this record, and since, in effect, he based a part at least of his retraction on the testimony of the witness Johnson, he should be permitted, if he is so advised, to offer the whole of the testimony given by Johnson when the latter corrected his own statements made to the Committee, when he was recalled by the Committee. We think the indictment was sufficient, as against the attacks made on it.

It follows that, for the error in refusing to submit to the jury the question whether appellant had fully and fairly retracted and corrected his original false statements, the case should be reversed and remanded for a new trial, which accordingly is ordered.