**STATE, ex rel. PUCEL, Relator, v. GREEN, etc. et, Respondents.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23820.   Decided March 15, 1956.

Lody Huml & Lockwood Thompson, for relator.
Frank T. Cullitan, for respondents.

## OPINION

By SKEEL, J:

This action is one in mandamus invoking the original jurisdiction of the Court, seeking an order directing the members of the Board of Elections of Cuyahoga County to include the name of Edward L. Pucel as a candidate for the office of Delegate from the Twentieth Congressional District of Ohio to the Democratic National Convention on the official democratic primary election ballot at the Primary Election to be held on the 8th day of May, 1956.

The cause came on for hearing on the 14th day of March, 1956, on the pleadings, the stipulations of fact and the arguments of counsel. The evidence is undisputed that the relator, prior to 4:00 P. M. of February 8th, 1956, filed with the Election Board of Cuyahoga County four nominating petitions as a "Lausche" delegate for President from the Twentieth Congressional District to the Democratic National Convention of 1956, which petitions, with declaration of candidacy, were filed on the forms issued by said Board. It is agreed that Exhibit No. A-1, a nominating petition was legally circulated and sworn to as provided by law, and contains fifty-six valid signatures of Democratic electors. Exhibit No. A-2 is a nominating petition containing forty-six valid signatures of qualified electors. Such petition was rejected in toto for the reason that one of the signatures, that is that of Mary Antoni was found by the Board of Elections to have been signed by her husband. Exhibit No. A-3, a nominating petition, containing thirty-nine valid signatures was rejected in toto for the reason that the signatures of two persons, Agatha Martin and Robert Martin, husband

and wife, were allegedly signed by the wife which the Election Board found invalidated the entire petition for the reason that the circulator's affidavit was untrue.

The facts, as shown by the record dealing with this Exhibit (affidavit of Robert Martin) are that when the circulator presented the petition to Agatha Martin for signature, she signed her name on line four (of Exhibit No. A-3) after the circulator explained what the petition was. This was done in the presence of her husband. He was then asked to sign the petition but because he did not have his glasses, he requested his wife to sign his name for him. She complied with his request and signed her husband's name, Robert Martin, in his presence and in the presence of the circulator on line five of the Exhibit.

The evidence as to the signatures of John Antoni and Mary Antoni, husband and wife, whose signatures are found on lines 59 and 60 of Exhibit No. A-2, is rather extensive. The names on the Exhibit show that John Antoni's signature was accepted by the Board as genuine while that of his wife, Mary Antoni, is marked in red (NS) presumably meaning not signed by the elector.

Both the electors John Antoni and Mary Antoni testified under oath before the Board that they severally signed their names on Exhibit No. A-2, John Antoni signing his name by his own hand on line 59 and Mary Antoni by her hand on line 60. Many samples of the signatures of both John Antoni and Mary Antoni were signed in the presence of the Board during the hearing and upon affidavits prepared prior to the hearing. There were also presented the signature of both electors on a deed, a mortgage, a note and an escrow agreement and on their respective registration cards filed with the Board of Elections. All of the signatures on these and other instruments were by the sworn testimony of the electors said to be genuine. The only persons present when the petitions were signed were the circulator and his wife. There is no evidence that the Board made any inquiry of them nor were they called to testify.

In dealing with this question the Election Board was acting in a quasi-judicial capacity. Its function was to determine the validity of the petitions offered by the relator with impartiality and fairness both to the candidate and to the electors of the county. The Board, in coming to its conclusion, must have completely disregarded the sworn testimony of witnesses, such testimony being uncontroverted in the record except for a comparison of handwriting (where neither of those whose signatures are challenged was requested to sign the name of the other for comparison with a genuine signature), and without expert help or at least without putting into the record the characteristics of the writing which influenced the conclusions reached. We find that there is no competent evidence in the record contradicting the sworn testimony that Mary Antoni, by her own hand, signed her name to the nominating petition. The Board, therefore, committed an abuse of discretion in excluding Exhibit No. A-2 and holding that the signature thereon could not be counted in considering the sufficiency of relator's nominating petition. A nominating petition containing 103 valid signatures as established by the uncontroverted evidence properly certified to and

filed with the Board of Elections as provided by law entitles the relator as a matter of law to have his name placed on the ballot for the office he seeks as declared and shown by the petition.

Having come to the conclusion that the relator has shown a clear legal right to the relief prayed for for the reasons just stated, it becomes unnecessary to give lengthy consideration to the legal question presented as to the duty of the Election Board in dealing with Exhibit No. A-3. The justification for disregarding this nominating petition in toto which admittedly contained 39 good signatures of electors of the district in the petition, is based on the law of the case of State, ex rel., v. Graves, 90 Oh St 311. The facts in that case are distinguishable in that they showed conclusively that fraud and forgery permeated the whole petition. The court held:

"3. The secretary of state, when acting as state supervisor of elections, has the authority to hear and determine the sufficiency and validity of all petitions filed with him under the provisions of Section 1c, Article II, Ohio Constitution, and his decision thereon is final, unless such decision has been fraudulently or corruptly made or procured, or unless he has been guilty of an abuse of discretion.

"4. Where it appears from the evidence that any circulators of parts of a petition have been guilty of a systematic course of fraud and forgery in procuring and writing names thereon, and have wilfully and intentionally sworn to false affidavits attached thereto, it is neither fraudulent nor an abuse of discretion on the part of the secretary of state to reject all parts of the petition procured by such circulators.

"5. Where evidence is offered tending to prove that many of the parts of a petition, although purporting to be verified by affidavit, were not in fact sworn to, as required by the constitution, the state supervisor of elections may reject any or all such parts, notwithstanding there is a conflict of evidence upon that question, unless his decision in that behalf is so manifestly and palpably against the weight of the evidence as to show fraud, corruption or an abuse of discretion on his part."

It is the unquestioned law of Ohio that fraud vitiates everything that its use creates. In the case of State, ex rel. v. Michell, 124 Oh St 161, the matter of submitting an amendment to the Charter of the City of Cleveland was proposed by initiative petitions. The facts are not clearly stated in the opinion but on page 164, the court said:

"The city charter expressly requires an affidavit to each petition by the person circulating the same that 'the signatures appended thereto were made in his presence and are the genuine signatures of the persons whose names they purport to be.' The council rejected entire separate petition papers because of the repudiation of their signatures by some of the signers thereof, which repudiation apparently was not controverted or refuted. Other petition papers were rejected, upon each of which there were five or more nonexistent addresses. These were not erroneous addresses or fictitious addresses, but locations of purported residences which locations in fact did not exist. Other petition papers which were rejected had signatures in the same handwriting and therefore the affidavit of the circulator that the signatures were made in his presence and were the genuine signatures of the persons whose names

they purported to be could not have been true. We are of the opinion that the city council was correct in its holding that the requirement that the name of a signer to such petition be written by himself is mandatory, and that signing petitions by proxy is not permissible. In each of these instances the affidavits must have been intentionally and knowingly false, and under the Graves case, supra, their rejection was warranted. One of the petition circulators pleaded guilty to a charge of perjury in the making of affidavits to petitions circulated by him, and the rejection of those petitions was conceded to be justified."

Judge Jones, in a strong dissenting opinion, expressed the opinion that, and we quote from page 167:

"The simple fact that some addresses could not be found in the class first referred to, or that two or more signatures were found to be in the same handwriting, or that one individual denied his signature on a petition, ought not to be held as imputing fraud or bad faith upon the part of the 563 or more circulators. A circulator may have well believed that the signer actually lived at the address he gave, or that two signatures could be lawfully written by one person if the second signature was written at the second voter's request; nor should the 2,307 signatures be invalidated because a single signer on a petition denied the authenticity of his signature."

The evidence in this case shows clearly that Mrs. Martin, at the request of her husband and in his presence, and in the presence of the circulator, signed his name on the petition. Under like circumstances under the law of contracts if this procedure had been followed in signing an agreement, the husband would, without the slightest doubt, be completely bound. Here he adopted the signature written for him in his presence as his. A technical interpretation of the election laws might justify a crossing out of the signature of Robert Martin, but there is no justification for striking out the whole petition because of the claim that the affidavit of the circulator was fraudulently made. There is not the slightest suggestion of fraud, chargeable to Robert Martin, in signing the relator's nominating petition or on the part of the circulator in signing the affidavit whereby this case is clearly distinguishable from the case of State, ex rel. v. Graves, supra, which was decided on the basis of fraud on the part of circulators of the petitions filed.

It is the privilege of every elector to present himself to his fellow citizens as a candidate for public office upon compliance reasonably and fairly with the manner prescribed by law for becoming a candidate and such right should not be denied for supposed technical variances not directly or indirectly concerned with his fitness and legal eligibility for the office he seeks.

Coming to the conclusion that the relator is clearly entitled to a writ of mandamus as prayed for, directing the respondents to print his name as a candidate for the Twentieth Congressional District of Ohio as a delegate to the National Convention of the Democratic Party, to be submitted at the Primary Election to be held May 8th, 1956, for the reasons above stated, the writ is ordered issued as prayed for.

Order see journal.

KOVACHY, PJ, HURD, J, concur.