STATE, EX REL. WINTERS, RELATOR-APPELLEE, *v.* APPLEGATE, AUDITOR, RESPONDENT-APPELLANT.

Ohio Appeals, Seventh District, Columbiana County.

No. 827. Decided May 2, 1963.

*Mr. Lawrence W. Smith,* for relator-appellee.
*Mr. Joseph W. C. Cooper* and *Mr. Ralph Atkinson,* for respondent-appellant.

FRANCE, J. This appeal on questions of law is from judgment of Common Pleas Court, Columbiana County, issuing a peremptory writ of mandamus to compel respondent to certify text of initiative petition to the Columbiana County Board of Elections.

On March 2, 1962, Ordinance No. 5, levying a municipal income tax, was passed by the City Council of East Liverpool and approved by its Mayor. The ordinance contained an emergency clause, precluding referendum.

On April 20, 1962, relator as one of a committee of five petitioners filed with respondent auditor two papers, one of which was a ribbon copy of an initiative part petition containing a two section proposed ordinance repealing Ordinance No. 5, to which was stapled a printed copy of Ordinance No. 5. The other was a letter of transmittal, directed to respondent which recited, inter alia:—

"'** * * I hereby tender to you, attached hereto and made a part thereof, a verified copy of the proposed initiative ordinance upon which initiative petitions are to be circulated * * *.
(signed) Joseph A. Winters.''

Thereafter, on July 20, 1962, relator delivered to respondent Auditor part petitions, bearing 1147 signatures, asking submission to the electorate of the proposed ordinance, all of the part petitions having a completed form of circulator's oath thereon. The respondent during the next ten days examined all signatures but not until July 30, after the ten days for public inspection required by Section 731.34, Revised Code, did he commence checking signatures questioned by him (no complaints were received from others) with the registration cards of the Board of Elections. About August sixth he consulted with handwriting experts to determine whether or not forgeries in the signatures were involved.

On August third, respondent questioned some of the persons whose signatures he claimed were forgeries and on August sixth, after consultation with the City Solicitor, he mailed letter to relator rejecting the petitions for insufficient signatures. The letter was received on August 7, 1962, which was the ninety-first day before the next general election to be held in the city. On August 20, 1962, petition of relator was filed and alternative writ issued.

The case was tried August 24, 1962, and on August twenty-ninth the Court's journal carried an entry granting the peremptory writ of mandamus. On August thirtieth request for findings of fact and law was filed; these findings were filed September fifth and on September tenth new journal entry granting peremptory writ was filed. It is from this final order that the appeal is taken.

Five errors are assigned, which reduce themselves to three questions, as follows:—

1. Did the court err in finding that the petitioners complied with Section 731.32, Revised Code, by filing a verified copy of the proposed ordinance before circulating the petitions?

2. Did it err in finding that four "part petitions" presented to the Auditor, containing 360 signatures of which 341 were not questioned as to validity, were valid part petitions and such 341 names required to be considered by respondent in determining the total number of valid signatures?

3. Was the case moot at its inception, or thereafter did it become moot?

With respect to the first question we consider the purpose of the requirement that a verified copy of the proposed ordinance be filed in advance. Obviously this is so that citizens asked to sign such petitions may determine, on inspection, whether the petitions circulated are bona fide, and in case of duplicating importunities which, if either, is the true measure. It also enables the auditor, as between many separate part petitions filed, to determine which ones (or all) truly and fairly presented the question to the signatory electors.

Since the proposed ordinance attains no official status until adopted by vote of the people, a verification by oath or otherwise that it is a true copy of an official document is manifestly impossible. A statement in writing that such language is the form of language to be used on the petitions as thereafter circulated would appear to satisfy formal requisites. The language appeared on the typed ribbon copy of an initiative part petition filed with the Auditor and several carbons of that particular impression were later filed, filled in as completed part petitions. The relator stated in writing in letter of transmittal accompanying and attached to it that it was a verified copy, meaning compared, checked and found free of error, upon which

pétitions were to be circulated. The trial court found this was sufficient compliance with Section 731.32, Revised Code, and we approve such finding.

We answer the first question: No.

As to the four "part petitions" in question it appears that on each of them a certain number of signatures, in each case that of husband and wife, appeared in the same writing. After making a personal check with some of the persons whose names thereon were signatures questioned by him, the respondent Auditor eliminated the entire part petition in each case, because he determined that the affidavit of the circulator of that part petition was knowingly false and therefore no affidavit at all. Other reasons are assigned, such as that one circulator did not read the affidavit "clear through" before she signed it, but the principal contention is that the signing of a petition by one spouse for another, in his or her absence, but in the circulator's presence and with his knowledge, automatically voids the circulator's affidavit,

"* * * that to the best of his knowledge and belief each of the signatures contained thereon is the genuine signature of the person whose name it purports to be; * * * and that they signed such petition with knowledge of the contents thereof."

The question is not whether a signature of one person may be placed on a petition for him by another in his absence. The parties are in agreement that such signature should not be counted. It is whether a circulator who was aware of such fact could truthfully sign the affidavit in question.

In two cases, *State, ex rel. Gongwer,* v. *Graves,* 90 Ohio St., 311, and *State, ex rel. Waltz* v. *Michell,* 124 Ohio St., 161, the Supreme Court approved the elimination of entire petitions where it appeared that the circulator well knew that the signatures were not genuine, were signed without authority or signed without knowledge of the contents. After the latter case the following language was added to Section 731.31, Revised Code:—

"In determining the validity of any such petition, all signatures which are found to be irregular shall be rejected, but no petition shall be declared invalid in its entirety when one or more signatures are found to be invalid except when the number of valid signatures is found to be less than the total number required by this section. * * *"

Thereafter, in determining the validity of similar petitions the Court of Appeals, Eighth District, in *State, ex rel. Pucel* v. *Green*, 101 Ohio App., 531, approved one in which the signature of one spouse had been placed thereon by the other at his request and in his presence and that of the circulator. In commenting on the affidavit, which was questioned, it stated:—

"* * * where there is not the slightest suggestion of fraud on the part of the husband or on the part of the circulator of the petition in signing the affidavit attached thereto, there is no justification for invalidating the entire petition because of the claim that such affidavit was fraudulently made."

For affirmance, but on other grounds, see 165 Ohio St., 175.

It is, of course, a wide step between signing for another who is present before the circulator and signing for another in his absence, either on the claim that the act was expressly authorized in advance or that the spouse has general authority to sign for the other, both of which claims were made to the circulators here, but it may not be so much of a difference in the reasonableness of the belief of the circulator: first, that the signature so secured is genuine, and second, that the person whose signature it purports to be signed with knowledge of the contents thereof.

In this connection the trial judge found as a fact that under these circumstances the affidavit was a truthful one (Findings 17-18), and that the circulators in question actually believed in the truth of the affidavit as signed. It so found in the face of the statement printed in red on the face of the part petition that "Whoever * * * signs a name other than his own is liable to prosecution." Since the trial court had three of these four circulators testify before him (no proof as to the questioned signatures or belief was made as to the fourth) and could gauge their truthfulness, their educational background and their relative grasp of legal language, we consider that in deciding this question he was making a factual determination and we are not inclined to disturb it. Nor can we state flatly, as a matter of law, that no circulator under such circumstances could have a reasonable belief in the truthfulness of such affidavit.

We note that the Court of Appeals, Eighth District, in *Simon* v. *Board of Education of Cuyahoga County*, 87 Ohio Law Abstract, 594, found that forty duplicate handwriting signatures

on a total of twenty-one part petitions (less than here) invalidated the respective affidavits, but it should be noted that the form of affidavit in that case (being on a nominating petition) was materially different and other facts are not set forth.

We find no error in the determination of the trial court that the 341 valid signatures appearing on the rejected four "part petitions" should have been counted. By counting them the requisite number of signatures to require placement on the ballot was more than adequately secured.

While answers to the two foregoing questions determine the question of the legal duty of respondent to certify the text of the initiated ordinance to the Board of Elections, the question of mootness, as argued under "other errors," attacks the timeliness and sufficiency of the remedy. The trial judge in his opinion (R. 105), noting that the respondent left no margin for relator to proceed by mandamus prior to August 7, 1962, held that relator should not be prejudiced by reason of time elapsed since then, apparently including the two week delay before filing the petition. This is in accordance with the general rule that a respondent cannot set up as a defense that the time fixed by statute to do the act has passed, when it was his own failure to perform the duty within time which made it necessary to bring the action. 34 American Jurisprudence, Mandamus, Section 38, page 833.

This is undoubtedly true as to the respondent, but it is not necessarily true as to the Board of Elections, which by Section 731.29, Revised Code, as amended since *State* v. *Weiss*, 122 Ohio St., 591, is required to submit the ordinance at the next general election "occurring subsequent to ninety days after the certifying of such petition to the board of elections." Whether upon the issuance of peremptory writ to the *Auditor* his certification should relate back in time to August sixth (the time when his duty arose), or to August twentieth (when the petition was filed), as far as the time of receipt for Board of Elections purposes, is concerned, is not clear. The board was not a party to the action nor was it privy to the respondent's breach of duty. In the absence of a specific order to it the board had the option to receive it as of the earlier date, in which case the question would have been placed on the ballot in November,

284

1962, or as of the later date when under the plain language of the statute it was required to be placed on the ballot at the next general election subsequent to ninety days after the certifying, which would place it on the ballot in November, 1963. The appeal and stay of execution beyond the 1962 election merely eliminates the first option. Under the rule in *State, ex rel. City of Middletown* v. *City Commission,* 140 Ohio St., 368, 376, a valid set of petitions does not lose its effectiveness during the course of litigation, but remains in abeyance, for years if necessary, until the litigation is disposed of, whereupon the question presented by it must be placed on the ballot at the first opportunity, notwithstanding that the wishes of the signers may have changed in the meantime. The case, for this reason, was not moot at filing of the petition and is not moot now. The Auditor on discharging his duties as ordered by the writ imposes a duty on the Board of Elections to put the question on the ballot at the next general election occurring more than ninety days following his performance.

The judgment of the Court of Common Pleas is affirmed.

DONAHUE, P. J., and BROWN, J., concur.