THE STATE, EX REL. SCHULMAN, *v.* CUYAHOGA COUNTY BOARD OF ELECTIONS.*

(No. 24337—Decided October 2, 1957.)

*Mr. A. E. Greenfield,* for relator.

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. John F. Smolka,* for respondents.

*Per Curiam.* This case in mandamus, invoking the original jurisdiction of this court, was presented upon the trial of the issues made by the pleadings and the allegations of fact and admissions, the stipulations of fact filed with the papers in the case, photostatic copies of the record of the board of elections of fees paid to them on August 7 and August 8, 1957, by candidates under the provisions of Section 3513.261 of the Revised Code, and a receipt for the payment of such fee issued by the board to candidate Harry Elconin on August 7, 1957, and the affidavits of candidates Earl W. Aurelius, Ben M. Skall, Harry J. Elconin, the relator—Milton Schulman—and Deputy Clerk

*Judgment affirmed, 167 Ohio St., 19.

of the Board of Elections, Harry Sanger. The evidence received, other than that contained in the stipulations of fact filed with the papers in the case, was presented by affidavit or exhibits received in open court and by agreement under paragraph six of the stipulations of fact.

The relator seeks an order of this court directing the Board of Elections of Cuyahoga County not to print the names of Earl W. Aurelius, Ben Skall and Harry J. Elconin as candidates for the office of mayor of the city of University Heights on the official ballot to be presented to the voters of that city at the general election for the election of a mayor and other municipal officers to be held November 5, 1957.

The facts are not in dispute. The candidates above named filed nominating petitions with a sufficient number of valid signatures of qualified electors as provided by law and in the proper form with the Board of Elections of Cuyahoga County. These candidates were seeking to have their names printed on the official ballot for the office of mayor of the city of University Heights to be presented to the voters of the city at the general election to be held November 5, 1957, for the term beginning January 1, 1958. Candidate Earl W. Aurelius filed his petitions with the board of elections on July 19, 1957, and with the filing of such petitions he "paid a fee of $33 as fixed by the board." The facts are the same as to candidate Ben Skall except that the petitions were filed on July 29, 1957, and his affidavit declares that he tendered the payment of a fee of $45 which was refused by the board and a fee of $33 was accepted "as fixed by the board." Candidate Harry J. Elconin filed his petitions in like manner on August 7, 1957, at 10:32 a. m., and paid a fee of $33 "as fixed by the board." However, he, thereafter, and on the same day, upon a call from the board that a fee of $45 should have been paid, returned at 2:45 p. m. and paid an additional $12. The board then amended his receipt to show a payment of $45 as the filing fee for the filing of petitions for the office of mayor of the city of University Heights for the term commencing January 1, 1958.

The salary of the mayor of the city of University Heights, changed by an emergency ordinance passed July 1, 1957, and approved by the mayor on July 2, 1957, was fixed at $9,000 per

annum. Prior to this amendment, the salary of the mayor of the city of University Heights was $6,600 per annum.

The statute of Ohio (Section 3513.261, Revised Code) in part provides:

"At the time of filing a nominating petition, the candidate designated therein shall pay to the election officials with whom it is filed a fee of one half of one percent of the annual salary of the office for which such candidate desires to be a candidate for election * * *."

That statute would require a fee of $33 for a candidate seeking the office of mayor where the salary as fixed by ordinance for the term sought is $6,600, and a fee of $45 if the salary is thus fixed at $9,000.

Paragraphs 6, 7, and 8 of the stipulations of fact provide as follows:

"6. Upon receipt of the ordinance and after all the candidates had filed their nominating petitions, the board of elections notified candidates Earl W. Aurelius, Ben Skall and Harry Elconin that an additional fee of $12 was required. The parties being unable to agree as to the exact time of payment respectfully request the court to receive evidence as to the exact time Harry Elconin paid said additional $12. On August 8, 1957, Ben Skall paid the additional fee of $12, and on August 9, 1957, Earl W. Aurelius paid the additional fee of $12.

"7. The last day for filing nominating petitions for the office of mayor of University Heights was August 7, 1957, at 4 p. m.

"8. On August 16, 1957, the relator filed three protests with the board of elections, copies of which are attached to respondent's answer, and marked exhibits A, B and C."

It is to be noticed from the foregoing stipulations that after notice given by the board of elections that the fee paid by the candidates Aurelius and Skall (who filed their petitions before the board was notified of the increase of the salary of the mayor of the city of University Heights for the term beginning January 1, 1958), should have been $45 instead of $33, they, as well as candidate Elconin, acted promptly in making up the $12 deficiency, Skall paying that amount to the board on August 8, 1957, and Aurelius depositing the same amount on August 9, 1957.

The relator filed a protest on August 16, 1957, as set forth in stipulation No. 8 (wherein Exhibits A, B, and C, attached to the answer of the respondent are included in the stipulation), basing the protest on the failure of the board to demand and receive the required filing fee of $45 upon the filing of the nominating petitions of the candidates Aurelius, Skall and Elconin. The protest was overruled without formal hearing. The protest made no claim that the number of valid signatures on the petitions was insufficient as required by law. Section 3513. 263 of the Revised Code provides in substance that it is the duty of the board to examine and determine the sufficiency of the signatures and of the petitions filed. The basis of the complaint, therefore, was not upon the grounds provided by statute for filing a protest and the relator was not prejudiced by the manner in which the board disposed of his complaint.

We find as a fact from the evidence submitted that candidate Harry Elconin paid a total of $45 or one half of one percent of the $9,000 salary fixed by the council of University Heights effective January 1, 1958, for the salary of the office of mayor on the day he filed his petition, to wit, August 7, 1957. This was, in fact, the last day for filing nominating petitions for the office of mayor of the city of University Heights as a candidate for that office at the general election to be held November 5, 1957.

There being no claim that the petitions of the three candidates for mayor of the city of University Heights were deficient in any other respect than that of failing to pay the proper fee as required by law at the time of filing their respective petitions, at least as to Harry Elconin, the law was fully complied with. The fact that he paid the full fee in two payments, one in the sum of $33 on the morning of August 7, 1957, and the balance of $12 in the afternoon of that day, after receiving notice from the board of elections, because the salary for the office had been changed from $6,600 to $9,000, the amount of the fee required to file for that office being $45, is of no moment. As to him, therefore, the relator's prayer for a writ of mandamus directing that his name not be printed on the ballot as a candidate for mayor of the city of University Heights at the general election to be held on November 5, 1957, is denied.

The sole basis upon which the relator seeks a writ of mandamus ordering the respondent not to place the names of Earl W. Aurelius and Ben Skall on the official ballot as candidates for the office of mayor of the city of University Heights at the general election to be held November 5, 1957, is that the full required fee of $45 was not paid to the board on the day their petitions were filed and that the respondent had no legal right to receive and file such petitions without receiving the full fee. It is further claimed that the payment of the balance of $12 after the last day for filing such petitions as provided by law (August 7, 1957) had passed did not validate the petitions or authorize the respondent to print the names of Earl W. Aurelius and Ben Skall on the official ballot as candidates for mayor of the city of University Heights at the general election to be held November 5, 1957.

The record does not disclose the slightest suggestion of fraud or of wrongdoing on the part of either the board or the candidates here involved. All intended to comply fully with all statutory provisions providing the manner in which one seeking to become a candidate for a political office is entitled by law to have his name printed on the official ballot. While we do not suggest nor do we hold that the board of elections owes any legal obligation to advise prospective candidates as to their legal rights or obligations in presenting themselves as candidates for public office, yet in common practice and to the great benefit to the public the board does advise, as here, on procedural matters, and their conduct in so doing deserves the highest commendation. Here the board, as agreed by the parties in the stipulations, fixed the fee. As to candidates Aurelius and Skall, the board of elections, not having been advised of the change of salary for the mayor of the city of University Heights for the term beginning January 1, 1958, acted in complete good faith, fixed their fee, and permitted them to pay an amount based on the knowledge it then had on that subject. Candidate Skall by his affidavit claims to have tendered $45 which was refused because the board had not been officially advised of the change. As soon as the board received notice of the change in salary, it, with due dispatch, notified these candidates of the mistake and the candidates responded with like promptness in

making up the deficiency, candidate Aurelius being the last to respond, making the additional payment of $12 on August 9, 1957, two days after the last day for filing petitions as above set forth. The mistake in the amount of the fee did not affect the legal rights of any other person or interfere with or delay any procedural steps imposed by law upon the board of elections.

Under the circumstances of this case, the board of elections was justified in receiving the petitions of these candidates as was done and to thereafter print the names of these candidates on the official ballots. The circumstances were such as to afford the board a "legal excuse" for receiving the petitions, and in doing so the board was in the exercise of its sound executive discretion.

In the case of *State, ex rel. Mihlbaugh,* v. *Bogart,* 73 Ohio App., 47, 57, 53 N. E. (2d), 75, the court, after referring to a number of cases, said:

"These cases simply represent an application to mandatory provisions of election laws, of the doctrine of legal excuse for noncompliance with statutory, charter or ordinance provisions, which the courts of this state have frequently applied to common-law, ordinance and statutory regulations designed for the safety of the public, and we approve the doctrine of legal excuse for noncompliance as being applicable to the provisions of the charter of the city of Lima, above mentioned.

"Applying the last rule approved by us, to the facts of the instant case, in the light of the general rule first approved by us, that statutory regulation of franchise right must be so construed as to insure, rather than defeat, the exercise thereof when and where possible, it is obvious that in this case there are two different states of facts arising from a mistake of the board of elections, charged with the duty of filing nominating petitions, as to the computation of time for filing such petitions under the provisions of the city charter, which constitute legal excuses for failure to file the nominating petitions within the time prescribed by the charter, to wit:

"1. The determination by the board, that the date of July 2, 1943, was the last day upon which nominating petitions for municipal officers of the city of Lima could be filed with the board, the advice given by the board to prospective candidates

who applied for nominating petitions which were thereafter filed with the board, and to newspaper reporters, and others, that July 2, 1943, was the last day for filing nominating petitions, and the announcement through the newspapers and by members of the board of the date of July 2, 1943, as the last day for filing such nominating petitions.

"2. As the charter does not prescribe any hour of the day as the time before which nominating petitions should be filed, such petitions might be filed at any time during the last day prescribed for filing, up to midnight of that day. The closing by the board of elections of its offices at five o'clock p. m., eastern standard time, on July 1, 1943, precluded candidates from exercising their right under the charter provision, to file nominating petitions on such date from the hour at which such office was closed until midnight of that day, and had the legal effect of permitting the exercise of the right to file on the following day.

"The failure to file the nominating petitions within the time prescribed by the charter being legally excused, as above mentioned, the filing of the peitions at the time they were filed, was lawful and valid, and the respondents are required by law to print the names of the candidates nominated thereby, on the ballot for the August primary and to hold a primary election for the offices for which they are candidates."

The facts in the instant case come clearly within the rule of the *Bogart case, supra.*

In the case of *State, ex rel. Pucel,* v. *Green,* 101 Ohio App., 531, 536, 133 N. E. (2d), 170, this court said:

"It is the privilege of every elector to present himself to his fellow citizens as a candidate for public office upon compliance reasonably and fairly with the manner prescribed by law for becoming a candidate, and such right should not be denied for supposed technical variances not directly or indirectly concerned with his fitness and legal eligibility for the office he seeks."

In conclusion, we wish only to add that it is fundamental that the writ of mandamus may be allowed to issue only when there is a clear right in the relator and a corresponding clear duty enjoined upon the respondents resulting from the legal

duties of the office or trust, which duty is being violated by the respondents. In this case we find neither. On the contrary, we find that it was the clear duty of respondents to correct the error of the amount of the fee to be paid upon the discovery that the amount paid was deficient. The record shows that upon discovering the error in respect to the filing fee fixed by it, the board corrected the mistake by notifying the candidates involved who promptly paid the additional fee so that at the time the complaint of the relator was filed or was here presented, the proper fees had been paid.

For all the foregoing reasons, the writ of mandamus should be, and hereby is, denied.

*Writ denied.*

SKEEL, P. J., HURD and KOVACHY, J., concur.