[No. 34905. *En Banc.* October 9, 1958.]

H. E. DONOHOE, *Petitioner and Relator,* v. W. G. SHEARER, *as County Auditor, Respondent,* THE SUPERIOR COURT OF LEWIS COUNTY, *John J. Langenbach, Judge, Respondent.*[1]

HILL, C. J., and MALLERY, J., dissent.

*C. D. Cunningham,* for relator.

*John J. Panesko,* for respondent.

*The Attorney General, John W. Riley* and *Gerald F. Collier, Assistants, John J. Sullivan* and *John Evich, amici curiae.*

[1]Reported in 330 P. (2d) 316.

WEAVER, J.—By writ of certiorari, relator presents for our consideration the legality of a judgment entered September 23, 1958, by the superior court for Lewis county. The judgment denied relator's application for a writ prohibiting the county auditor from (a) transmitting to the secretary of state the name of J. A. Vander Stoep as a qualified and eligible candidate for the office of justice of the peace, and from (b) listing his name as an eligible candidate for said office in the notice to be published for the general election to be held November 4, 1958.

The facts are not in dispute.

At least three months prior to the first day that declarations of candidacy for elective office could be filed, the secretary of state, as the statutory chief election officer of the state (RCW 29.04.070), prepared and caused to be distributed throughout the state a "1958, State of Washington Official State Election Calendar." This calendar sets forth the various events which must occur in the election process and the dates thereof, and also includes detailed references to the state statutes which govern the process. The calendar is promulgated as part of the statutory duties required of the secretary of state as chief election officer. RCW 29.04-.060.

The trial court found, and error is not assigned to the finding, that

"The official state election calendars for the years 1952 [which presented a similar question] and 1958, marked Exhibits I and II were prepared by and distributed by the Secretary of State to each and every election officer in the state of Washington and promulgated to the general public, in that five thousand copies of each calendar were distributed to public libraries, newspapers, radio stations, and the central committees of the various political parties."

July 20, 1958, was a Sunday. The office of the respondent county auditor was closed on July 19 and July 20, 1958.

The official state election calendar designated Monday, July 21, 1958, as the last day a candidate could file his declaration of candidacy. It stated as authority:

"RCW 29.18.030 (Sec. 1, Chap. 234, Laws 1947). Filing period for state primary set as July 1st to 20th, inclusive. However, Attorney General opinion dated 9/12/51 extends period to Monday, July 21st, since last day falls on Sunday."

The respondent county auditor, relying upon and acting pursuant to the direction of the secretary of state, accepted and filed Mr. Vander Stoep's declaration of candidacy on Monday, July 21, 1958.

Had three or more candidates filed for the office of justice of peace of Chehalis precinct, Lewis county, Washington—a nonpartisan judicial office—the elective selection would have been submitted to the voters at the primary election on September 9, 1958. Only two candidates, however, filed for the office, of whom Mr. Vander Stoep was one; hence, pursuant to RCW (1955 Sup.) 29.21.180, the name of neither of said candidates was printed upon the official ballot for the primary election.

The sole question is whether Mr. Vander Stoep's declaration of candidacy was timely filed in the office of the county auditor, so that his name may appear as a candidate on the official ballot for the general election to be held November 4, 1958.

RCW 29.18.030, to which reference is made in the official state election calendar, provides

The name of no candidate shall be printed upon the official ballot used at a September primary, unless not earlier than the preceding July 1st nor later than the preceding July 20th, a declaration of candidacy is filed in the form hereinafter set forth, nor [2] at any other primary election unless at least forty-five and not more than sixty days prior to such primary, a declaration of candidacy has been filed by him as provided in this chapter . . ." (Portions of statute numbered by us for reference, *infra*.)

Generally, there are three types of statutes that fix the time in which an action must be performed. In the first, the *initial* and *terminal* dates are specified. In the second, the act must be done "at least" a stated number of days "and not more than" a stated number of days "prior to" a fixed date. In the third, the act must be done within a fixed

number of days after an initial date. Seldom is the question raised that the act was done prematurely. Usually, the question is whether the act was *timely* done or was performed within the time limited by the terminal date.

RCW 29.18.030, *supra* (Laws of 1947, chapter 234, § 1, p. 963), combines the first two types of statutes in the same sentence. That portion of RCW 29.18.030 designated as (1) applies to the September primaries and fixes the *initial* and *terminal* dates of the period in which a declaration of candidacy may be filed.

That portion of the statute designated as (2) applies to other primary elections and requires that a declaration of candidacy be filed "at least forty-five and not more than sixty days prior to such primary."

There is one obvious difference between the two portions of the statute: The first does not require a computation of time; the second portion does and requires that the initial and terminal dates be determined by counting *backward* from the date of the primary election. The chance, however, that the terminal date for filing a declaration of candidacy will fall on a Sunday or a holiday is equal under both portions of the statute.

RCW 1.12.040 provides:

"The time within which an act is to be done, as herein provided, shall be computed by excluding the first day, and including the last, unless the last day is a holiday or Sunday, and then it is also excluded." (See also RCW 4.28.005.)[2]

This statute, substantially in its present form, has been the law of this jurisdiction since territorial days. It first

---

[2] The legislative history of these two statutes (RCW 1.12.040 and RCW 4.28.005) seems to indicate that they apply only to practice and proceedings in civil actions. See titles of chapters appearing in Laws of 1854, chapter 3, § 486; Code of 1881, § 743; Laws of 1893, chapter 127, § 26, p. 415. However, *Allen v. Morris*, 87 Wash. 268, 274, 151 Pac. 827 (1915); *State ex rel. Evans v. Superior Court*, 168 Wash. 176, 179, 11 P. (2d) 229 (1932); *State v. Levesque*, 5 Wn. (2d) 631, 635, 106 P. (2d) 309 (1940); and *State ex rel. Earley v. Batchelor*, 15 Wn. (2d) 149, 130 P. (2d) 72 (1942), treat these statutes as being of general application; hence, the appearance of RCW 1.12.040 in the chapter entitled "Rules of Construction."

appeared in Laws of 1854, § 486, p. 219; Code of 1881, § 743. In *Van Duyn v. Van Duyn,* 129 Wash. 428, 225 Pac. 444, 227 Pac. 321 (1924), the court indicated that this section adopted what would be the general rule in the absence of statute.

We need not consider the third type of "time" statute—that an act must be done within a fixed number of days after an initial date—because it is not involved in the instant case.

In *State ex rel. Earley v. Batchelor,* 15 Wn. (2d) 149, 130 P. (2d) 72 (1942), the court considered the second type of "time" statute as encompassed in the second part of RCW 29.18.030, *supra.* The statute before the court for interpretation required that

" 'All nominations for office . . . shall be filed not more than sixty (60) days and not less than thirty (30) days prior to the day of election . . .' " (p. 151)

November 3, 1942, was election day. Excluding the first day, November 3, as required by Rem. Rev. Stat., § 150 (now RCW 1.12.040, *supra*), and counting backwards, the thirtieth day fell on Sunday, October 4. The candidate attempted to file his declaration with the secretary of the port commission at 4:00 p. m. on Saturday, October 3. The office closed at noon on Saturdays, a custom established over a period of ten years. On the authority of *State ex rel. McQuesten v. Hinkle,* 130 Wash. 525, 228 Pac. 299 (1924), this court held that the tender to file was not timely made on Saturday afternoon.

The candidate then tendered his declaration of candidacy on Monday, October 5. This court sustained the refusal to accept the tendered declaration of candidacy, saying

" . . . where a statute requires the filing of a petition to be accomplished not less than a certain number of days before the date of election, the fact that the last day falls on Sunday does not permit the filing to be made on the following business day. [Citing authorities.]

"It seems apparent that the primary purpose of the statute requiring nominations to be filed not less than thirty days before the election is to give notice, for that period of time, to the election officials and to the public of the identity

of the candidates. Such statutory provisions are generally regarded as mandatory. 29 C. J. S. 206, § 137; annotation, 72 A. L. R. 290. The author of the annotation just cited expressed therein the following conclusion, p. 290:

" 'It is generally and almost universally held that the statutory provisions in election statutes, requiring that a certificate or application of nomination be filed with a specified officer within a stipulated period of time, are mandatory.'

"If we should hold contrary to the authorities above cited that, the thirtieth day falling on Sunday, Mr. Martin should have the next day, Monday, in which to file, then his filing would be on the twenty-ninth day preceding the election; and the mandatory provision of the statute that the filing must be accomplished *not less than thirty days* before election would be violated." (p. 154)

The *Earley* case was decided in 1942. RCW 29.18.030 was passed by the legislature in 1947. We assume, when it adopted the second portion of the statute, that it was cognizant of RCW 1.12.040 and of this court's decision that, when the forty-fifth day prior to the primary election (counting backwards) fell on Sunday, declarations of candidacy could not be filed on the following Monday.

█ The first portion of RCW 29.18.030, *supra*, is clear and unambiguous. It fixes a definite date—not "later than the preceding July 20th." This does not require the computation of time; hence, RCW 1.12.040 is not applicable.

█ Our conclusion that RCW 29.18.030, *supra*, is a mandatory statute is supported by the text and authorities cited in 3 Sutherland, Statutory Construction (3d ed.), § 5818, p. 109, wherein it is said:

"A rule for determining whether a statute is mandatory or directory has even been formulated in terms of the stated consequences as the test. 'If [statutes are] mandatory, in addition to requiring the doing of the things specified, they prescribe the result that will follow if they are not done; if directory, their terms are limited to what is required to be done.' "

This conclusion dovetails with the court's decision in *State ex rel. Earley v. Batchelor, supra.*

It does not follow, however, that the trial court should be reversed, with instructions to eliminate Mr. Vander Stoep's

name from the ballot in the general election to be held November 4, 1958.

The record before us does not disclose how many aspirants for public office filed their declarations of candidacy on Monday, July 21, 1958; nor does it disclose how many of them were actually nominated in the state primary election of September 9.

It would appear that a statutory means exists to assure the appearance of the names of candidates for *partisan* political office, successful in the primary election, who filed their declaration of candidacy on July 21. The county or state central committees (whichever is appropriate) of the respective political parties may, "within thirty days after the primary," fill vacancies on their tickets. RCW 29.18.150. This possibility is not available in the instant case, however, for the office of justice of the peace is a nonpartisan, judicial office within the meaning of RCW (1955 Sup.) 29.21.180; hence, if the trial court is reversed, the name of Mr. Vander Stoep's opponent will appear unopposed on the general election ballot.

■ The touchstone for the instant case is the statutory official state election calendar, prepared by the secretary of state after advice from the state attorney general. It was given wide publicity; it was the official pronouncement of the state's chief election officer by which election officials and aspirants for office governed themselves. Mr. Vander Stoep as a potential candidate and respondent as county auditor had a right to rely thereon.

In a similar situation, the Supreme Court of Missouri said in an *En Banc* opinion:

"The respondent contends June 4 and not June 5 was the last day for filing. We do not need to inquire into the matter further than to say that, in any event, we are in agreement with the conclusion of the Special Commissioner that 'relators can not be deprived of their right to file any time during June 5, 1942, *because of the opinion of the Attorney General of the State of Missouri rendered to the Secretary of State* for the purpose of informing prospective candidates of the final filing date for the August 4, 1942, primary election, which said opinion recites: "that June 5,

1942, is the last day for a candidate to file his declaration for candidacy." ' [See *In re Bayne, supra.*] [69 Misc. 579, 127 N. Y. S. 915] *The relators had a right to rely upon the date as determined by the Attorney General.*" (Italics ours.) *State ex rel. Huse v. Haden,* 349 Mo. 982, 163 S. W. (2d) 946 (1942).

In *Clegg v. Bennion,* 122 Utah 188, 247 P. (2d) 614 (1952), the court conceded that the statute that fixed the date for aspirants to file their declarations of candidacy was mandatory. The secretary of state had announced and given statewide publicity to the fact that July 12 was the final day for filing. He was in error; July 11 was the correct date. The court, however, sustained the validity of filings made on July 12 saying:

"We hold under the facts of this case that defendant Dalton was legally excused from filing the day before he did so. The authorities almost without exception sustain our position in similar instances. [fn. *"Mihlbaugh v. Bogart,* 73 Ohio App. 47, 53 N. E. (2d) 75; *In re Bayne,* 69 Misc. 579, 127 N. Y. S. 915; *Huse v. Haden,* 349 Mo. 982, 163 S. W. (2d) 946; *People v. Ham,* 56 Misc. 112, 106 N. Y. S. 312; *State v. Harris,* 115 Fla. 3, 155 So. 100; contra, *State v. Marsh,* 120 Neb. 287, 232 N. W. 99, 72 A. L. R. 285."] The tone of those decisions echoes in the strikingly similar *Mihlbaugh* case, where, under a statute like ours, a declarant was excused from filing on time because, among other things, the Board of Elections had announced that a certain date (too late) would be a timely filing date, which announcement was given wide publicity in the press, and the late filers relied thereon.

"If an error was committed by the Secretary of State in representing that July 12 was the deadline, followed by widespread publicity, the record nevertheless indicates that he and those relying on him acted in good faith. There is no evidence that filing on July 12 injured anyone as a practical matter."

To the same effect is *In re Application of Zichello,* 50 N. Y. S. (2d) 48 (1944).

The election procedure for filing declarations of candidacy has been uniform throughout the state. All candidates had an equal time in which to file their declarations. No candidate has been favored over another. No one has been in-

jured nor put to additional expense. There is ample time for the secretary of state to make his certification of nominees. Mr. Vander Stoep's opponent is deprived of nothing save the fact that he will not be given an election by default.

As the circumstances demand prompt disposition of the case, the clerk is directed to send down the remittitur forthwith upon the filing of this opinion.

The judgment is affirmed.

DONWORTH, FINLEY, ROSELLINI, and FOSTER, JJ., concur.

HILL, C. J., and MALLERY, J., dissent.

OTT and HUNTER, JJ., did not participate.