In the Matter of the Contest of the Des Moines Municipal Primary Election and General Election, Filed by George WINGERT (Consolidation of Polk County District Court cases Equity No. CE5–2463, Equity No. CE4–2187 and Equity No. CE4–2189), Contestant-Appellee,

v.

Tim URBAN, Incumbent-Appellant, for the Four-Year at Large City Council Vacancy.

No. 2–59622.

Supreme Court of Iowa.

Feb. 16, 1977.

Arthur C. Hedberg, Jr., of Hawkins, Hedberg & Ward, and Richard B. Margulies of Rosenberg & Margulies, Des Moines, for incumbent-appellant.

Patrick H. Payton of Payton & Hearn, P. C., Des Moines, for contestant-appellee.

HARRIS, Justice.

This appeal stems from a contested election for a seat on the Des Moines city council. The trial court held the candidate who received the greater number of votes was not legally on the ballot and thus could not assume office. The ruling then concluded the candidate receiving the lesser number of votes should be certified as the winner. We reverse the trial court.

The voters at the November 12, 1975 regular election for the Des Moines city council were furnished ballots which offered two candidates for the office of councilman at large. One of the candidates was George Wingert (Wingert), the contestant in these proceedings. The other was Tim Urban (Urban), who was seeking re-election. In the regular election Urban received 23,811 votes; Wingert received 12,853 votes.

Notwithstanding Urban's easy victory the trial court ruled he could not take office because his name should not have been on the ballot. Urban's candidacy was challenged by Wingert on the ground Urban's nominating petitions lacked sufficient signatures.

The root of Urban's difficulty was a change in the number of required signatures. Under Acts of the 65th G.A., 1973 Regular Session, chapter 136 (which became effective July 1, 1975) the Iowa legislature extensively revised our election laws. Prior to the change, under § 363.11, The Code, 1973, any person desiring to become a candidate for an elective municipal office was required to file a petition signed by qualified voters equaling in number two percent of the greatest number of votes cast for *any candidate for that same office* at the last regular election. Under § 376.4, The Code, 1975, the numerical requirement for such signatures was changed to two percent of those *who voted to fill the same office* at the last regular election. Apparently James Maloney (Maloney), Polk County auditor (who under § 47.2, The Code, also serves as county commissioner of elections), and Margaret Vernon (Vernon), Des Moines city clerk and deputy commissioner of elections were both unaware of the change in the law.

In seeking nomination for re-election Urban secured nomination papers from Vernon. Vernon informed Urban he needed 345 signatures or more to qualify as a candidate. She wrote that figure on the papers she provided him. At a later meeting of Urban's campaign staff it was determined he had sufficient signatures and on September 22, 1975 Urban took the nomination papers back to Vernon. Vernon found the signatures legally sufficient, being 510 in number.

On September 23, 1975 Vernon certified to Maloney that Urban's name should be placed on the ballot. Maloney checked Urban's nomination papers and determined they contained 525 proper signatures.

There were 33,913 votes cast for the office of councilman at large at the last preceding regular election. Two percent of 33,913 is 678. Thus it is apparent Urban failed to timely file the required number of signatures.

Wingert, who had fully complied with the amended nomination requirements, contested the placing of Urban's name on the primary ballot. However Maloney, as commissioner of elections, announced his intention to place Urban's name on the primary ballot. On October 6, 1975 Wingert filed a suit seeking a temporary and permanent injunction to prevent placing Urban's name on either the primary or regular election ballot. On the same day, after issuance of an attorney general's opinion, Maloney announced he would remove Urban's name from the primary ballot. On the following day Urban brought suit in Polk District Court seeking temporary and permanent injunction to prevent Maloney from removing his name. On October 8, 1975 a consolidated hearing was held to consider both suits for injunction. The trial court enjoined removing Urban's name from the primary ballot.

A primary election for city offices is not held in every case. Section 376.6, The Code, provides, with specified exceptions:

"An individual for whom a valid petition is filed becomes a candidate in the regular city election for the office for which he has filed, except that a primary election must be held for offices for which the number of individuals for whom valid petitions are filed is more than twice the number of positions to be filled. * * *."

Because there were three candidates for the office of councilman at large a primary election was held October 21, 1975. Urban finished first, Wingert second, another candidate third. Urban and Wingert were declared winners and were thereby nominated for the regular election. Accordingly their names were ordered placed on the regular election ballot.

On October 28, 1975 Wingert filed a "statement of contest" with Polk County election officials, contesting the placement of Urban's name on the primary ballot.

Similarly, on November 12, 1975, after Urban's success in the November 4 regular election, Wingert filed a further statement of contest protesting the placing of Urban's name on the regular election ballot.

Pursuant to § 376.10, The Code, the election contest court convened November 25, 1975. The mayor of Des Moines and two Des Moines attorneys were the election court judges. Wingert's various protests were consolidated and submitted. The election court ruled (two to one) Urban's name was correctly placed on both the primary and regular election ballots.

Wingert appealed the election court's decision to district court. By stipulation Wingert's action for injunctive relief, Urban's action for injunctive relief, and Wingert's appeal from the election contest court were consolidated. The matter was submitted and on June 24, 1976 the district court ruled Urban's name was improperly placed on both the primary and regular election ballots. The contest court's decision that Urban was duly elected was annulled and Wingert was declared the winner of the regular election. Urban brought this appeal from the district court's ruling.

■ I. Urban first contends the provisions of § 376.4, The Code, requiring a certain number of signatures on a nominating petition are directory rather than mandatory. The section provides in material part:

"A voter of a city may become a candidate for an elective city office by filing with the city clerk a valid petition requesting that his name be placed on the ballot for that office. The petition *must* be filed not more than sixty-five days nor less than forty days before the date of the election, and *must* be signed by voters equal in number to at least two percent of those who voted to fill the same office at the last regular city election, but not less than ten persons. * * *." (Emphasis added.)

It is clear the legislature intended the signature requirements of the section to be mandatory. Section 4.1(36), The Code, provides: " * * * (a) The word 'shall' imposes a duty. (b) The word 'must' states a requirement. (c) The word 'may' confers a power." This section exempts only statutes in which the legislature specifically expresses a contrary intent. No contrary intent is expressed in chapter 376.

Statutes specifying numerical signature requirements are generally thought to be mandatory. 29 C.J.S. Elections § 109, p. 261; 25 Am.Jur.2d, Elections, § 171, p. 865.

Having established the signature requirement is mandatory there remains the question of the effect of the two elections. In both elections the voters clearly expressed their wish Urban be re-elected. Do the elections somehow rectify Urban's failure to comply with the nomination requirements? An intervening successful election often mitigates the effect of a failure to satisfy nominating petition signature requirements. The mandatory nature of election requirements are intended to compel compliance by election officials and candidates and ordinarily failures do not vitiate the will of the voters. The rule is stated:

"As a general rule, unless the statute expressly declares that the particular act in question is essential to the validity of the election or that its omission shall render the election void, statutory provisions in regard to nominations are not regarded as mandatory in the sense that noncompliance with them vitiates the election, but only in the sense that officers or persons to whom they apply are obligated and may be compelled to comply with them prior to an election and are subject to the penalties prescribed by the statutes relating to offenses against election laws. In determining how far irregularities in party nominations for office will affect the result of the general election, the fundamental inquiry is whether the irregularity complained of has prevented a full, fair, and free expression of the public will. An election in which the voters have fully, fairly, and honestly expressed their will is not invalid even though a wrong method is followed in the nomination of candidates and their names are improperly printed on the official ballot. * *." 25 Am.Jur.2d, Elections, § 143, pp. 834–835.

See also 29 C.J.S. Elections § 214, pp. 598–609.

Our own cases have taken the same view. In *Kirchoff v. Humboldt Com. Sch. Dist.*, 253 Iowa 756, 760, 113 N.W.2d 706, 708–709 (1962) we said:

"In *Turnis v. Board of Education [in and for] Jones County*, 252 Iowa 922, 927, 109 N.W.2d 198, 201, it is said, 'While most courts generally follow the rule that after an election has been held, the statutory regulations are construed as directory, they qualify it by saying that in the absence of fraud or bad faith or constitutional violation, an election which has resulted in a fair and free expression of the will of the legal voters upon the merits will not be invalidated because of the departure from the statutory regulations governing the conduct of the election, except in those cases where the legislature has clearly and unequivocally expressed an intent that a specific statutory provision is an essential jurisdictional prerequisite and that a departure therefrom shall have the drastic consequences of invalidity'.

"In short, after an election has been held and the voters have spoken, such election will not be held invalid and the voice of the people thwarted in the absence of fraud, prejudice or definite legislative pronouncement thereon. None such appears herein." See also *Stanley v. Southwestern Com. Col. Merged Area, etc.*, 184 N.W.2d 29 (Iowa 1971); *State ex rel. Schilling v. Community Sch. Dist. of Jefferson, Greene County*, 252 Iowa 491, 106 N.W.2d 80 (1961); *In re Incorporation of Windsor Heights*, 232 Iowa 143, 4 N.W.2d 859 (1942).

■ Because we find nothing in the record which indicates the voters of Des Moines were unable to freely and fairly express their will the foregoing authorities might seem to bar Wingert's claim. However it must be remembered Wingert did not wait until after the elections to begin his contest. He protested at every stage and by every means available.

In issuing the injunction which kept Urban's name on the ballot the trial court remarked "if any person has been injured there exists adequate statutory provisions for contesting the election." Accordingly it would be unfair to change the effect of any statutory noncompliance merely because the elections were held. We believe Wingert's claim should not be weakened by the fact the elections were held.

■ II. Urban seeks to uphold the election on alternative claims (1) his noncompliance with the signature requirement of § 376.4, The Code, is excused in these exceptional circumstances, and (2) equitable estoppel. We accept Urban's first claim and hence do not reach his second claim.

In division I we pointed out the signature requirement of § 376.4 is mandatory. It does not necessarily follow it is jurisdictional. See *State v. Ice*, 207 Ind. 65, 191 N.E. 155 (1934). Election officials can and should refuse to place a prospective candidate's name on the ballot when the requirements are not met. Here there was no such refusal. Rather Urban's petitions were mistakenly accepted by an election official. Urban was officially told his name would be placed on the ballot.

■ It is well established that in exceptional circumstances candidates may be excused from mandatory petition requirements. See 29 C.J.S. Elections § 137, p. 402; 25 Am.Jur.2d, Elections, § 140, p. 831; Annot., 98 A.L.R.2d 1331, 1380–1382. It is apparent the statutory failure most commonly encountered and excused is a failure to meet a filing deadline. See *Donohoe v. Shearer*, 53 Wash.2d 27, 330 P.2d 316 (1958).

The trial court recognized failures to comply with statutory *deadline requirements* are sometimes excused. However the trial court did not believe filing deadline cases were applicable because here the mistaken advice and resulting failure related to *numerical signature requirements*. We disagree.

We do not believe the legislature intended either requirement to be more stringent than the other. The legislature used the word "must" in stating each requirement. See § 376.4.

Like signature requirements, statutory deadline requirements are considered mandatory. 29 C.J.S. Elections § 137, p. 400; 25 Am.Jur.2d, Elections, § 140, p. 831; Annot., 72 A.L.R. 290. We find no basis for distinguishing, as the trial court did, between the mandatory requirements.

The excuse of noncompliance is not limited to filing deadline failures. Noncompliance with a filing fee requirement was excused when election officials miscalculated the amount of a statutory filing fee because they were unaware of a change in a controlling ordinance. *State, ex rel. Schulman v. Cuyahoga County Board of Elections*, 103 Ohio App. 527, 145 N.E.2d 149 (1957).

The facts presented in the instant case are especially appropriate for excusing the failure. There is no question Urban relied in good faith upon an official's honest mistake. It must be remembered Vernon, the election official, had statutory authority over *acceptance* of nomination papers. Obviously she was to accept petitions filed with a sufficient number of signatures and reject petitions filed with insufficient signatures. To make such a determination it was necessary for Vernon to be aware of the statutory numerical signature requirements. It is not surprising Urban relied upon Vernon's acceptance of the nominating petitions. We hold Urban was excused under exceptional circumstances from strict compliance with the numerical signature requirements of § 376.4, The Code. Urban's name was properly on the ballot.

The judgment of the trial court is reversed.

REVERSED.

All Justices concur except MASON, RAWLINGS and LeGRAND, JJ., who dissent.

REES, J., takes no part.

MASON, Justice (dissenting).

The majority concedes the signature requirement of § 376.4, The Code, was clearly intended by the Legislature to be mandatory. The opinion then turns to a consideration of Urban's contention his noncompliance with the signature requirement of the statute was excused. Ignorance of the signature requirement of the statute on the part of Urban, the Polk County Auditor, and the Des Moines City Clerk is held to constitute an excuse for noncompliance, despite the fact that existence of the statute as amended was available to Urban and the others. I cannot agree with this reasoning, and I therefore dissent.

RAWLINGS and LeGRAND, JJ., join this dissent.